Good morning, Your Honors. Andrew Chang for Appellants. Your Honors, in this case, one thing that is not in dispute is what HIPAA says. And what HIPAA says is that health insurance policies are guaranteed renewable at an insurance option. Now, let's assume for a moment that all of the incorporation of the statutes by reference and so on is all true. Don't you have a problem with the nature of these policies? It seems to me that, at least as I'm looking at this, that both the HIPAA and the California insurance regulations deal with individual health insurance policies, where these were group insurance policies and or the blanket policies, at least the ones that were issued later. Is that correct? It is not correct, Your Honor, for two reasons. First, the first premise of Your Honor's question is incorrect. HIPAA actually applies to both individual and group, both federal and state. That's undisputed. And what's the site on that? Well, let's see. HIPAA, the federal HIPAA is 300GG42 on individual. And where in there does it refer to? It says that a health insurance issuer that provides individual health insurance coverage to an individual shall renew or continue to enforce such coverage at the option of the individual. But that's an individual policy. That's individual, right. But there's a counterpart to that, Your Honor, which is 300GG-12, which is cited in the brief. Not quoted, though, because it's identical language, I think, which says if a health insurance issuer offers health insurance coverage in the small or large group market in connection with a group health plan, the issuer must renew or continue to enforce such coverage at the option. Is there a state equivalent to that? Yes. The California equivalent to those two statutes are also cited in the brief. California Insurance Code 10273.6, which applies to the individual policy, and 10273.4, which applies to the group. And Judge Collins actually cited both of those statutes in her order, although she transposed them. Can you explain what the difference is between a blanket insurance policy and a group insurance policy? It's clear that the California Code draws a distinction between them. It has an entire section devoted to blanket insurance. Well, there is a distinction, but it's a distinction that makes no difference in HIPAA. HIPAA applies to all policies, no matter what they are, whether they're blanket, individual, group. Well, we just looked at that to see that we had one section that said individual and one section that said group. That's correct. And in the California insurance policy, it has a third category called blanket. Well, the Federal does, too. I mean, I don't think there's any dispute that there are differences between policies, but it's a difference without materiality, because HIPAA does apply to any health policy. It's very broad. And I cited that in the brief, but that is at 300G-91, subsection B, little b as in boy, number one, which says the term health insurance coverage, and that applies to both group and individual, health insurance coverage, means benefits consisting of medical care under any hospital or medical service policy or certificate. It's extremely broad. And I think the reason for that is obvious. The legislature doesn't want there to be any fine distinctions between certain kinds of health insurance. If it's health insurance, it's covered under HIPAA. What kind of insurance do your clients have? You mean what did they have? Yes. They had, under HIPAA, it is defined as individual. It doesn't seem like individual because it's issued actually to an association, but under both state and federal law and regulation, a policy like that that is issued to an association that was formed solely for the purpose of obtaining insurance for, you know, a group of people, or a number of people, is by definition an individual policy. Okay. Now, if Mutual withdraws from that market. Yes. It's out from under all these provisions. If it complies with HIPAA, it is. That's what HIPAA says. Is that what happened? That is not what happened. And I know Mutual disputes that, and that's well and good, except that we've got a dispute with that, and that's something that can't be resolved in summary judgment. That is a classic factual dispute. Now, we have evidence in the record that we did introduce in the district court that shows that within months after it purportedly finally withdrew from the market, it was coming, it was selling to California residents a health insurance policy. And that's the blanket policy. Well, that's what they call a blanket policy. And how it's characterized is, in your view, a question of fact. There's no dispute about what the policy is and what it covers, is there? That's right. It's right there in the record. Right. That's right. And for purposes of HIPAA. Factual issue. Well, no, I meant the factual issue as to whether. Well, that's a good point. Maybe there is. It's undisputed that they reentered the market and therefore didn't comply with HIPAA. That's fine. Where did they not with respect to blanket insurance? I'm looking at California Insurance Code 10270.2 that appears to define blanket insurance. All right. And at least from what I can tell from the briefs, at least arguably, and I'm interested in your thoughts on this, what they reintroduced certainly into California was blanket insurance. Do you disagree with that? I would complete the phrase and call it blanket health insurance. Okay. Call it blanket health insurance. All right. But it is health insurance. But the reality is California law defines group insurance, individual policies, and blanket insurance differently. All right. So if as a matter of law what they sold was blanket insurance, then it is not group insurance and it's not individual insurance, whether or not it covers health. Isn't that correct? It is not correct, Your Honor, because we're dealing with HIPAA and HIPAA makes no distinction. HIPAA is the governing statute. Well, that's the federal governing statute, but we have a California statute. Well, the state HIPAA is identical. The state and federal HIPAA makes it clear that any health insurance is covered under HIPAA. Now, all the disputes about blanket individual group don't have any materiality in this case. They are a classic red herring. Because under HIPAA, it simply doesn't matter what they are called. If they provide health insurance benefits, they come under HIPAA. And so I just think that that, I'm glad Your Honors are asking those questions, because obviously we need to make that clear. But that is very clear in the HIPAA statutes, both state and federal, and I would urge the court to look at those again. When they issued these policies, they at least, according to the briefs, tried to comply with California law. They went to the insurance commissioner and so on. They thought they were complying with the law. Is it your position that since, according to you, HIPAA makes no distinction between a policy of this nature and a group and a blanket versus individual and group. Yes. That it doesn't matter whether they comply with California law. They're just toast, because HIPAA is all that really controls here. No. They don't comply with California law because they violated California HIPAA. And so you have said HIPAA, and I just want to make it clear. What I'm concerned about here, Counselor, it sounds like you're saying that even though California makes a distinction for other reasons to policies, HIPAA doesn't. HIPAA, of course, is a federal statute. I thought your point was that because that law does not make a distinction, when they marketed these policies in California, and I'm saying, if hypothetically they complied with the California statute, they couldn't have complied with HIPAA because HIPAA doesn't make that distinction. Is that not your point? That is not my point. Okay. Clarify it for me. I'll give it a try again. And I apologize that it's confusing. First of all, HIPAA is both California and federal. I want to make that clear. There is a California statute. Well, okay, you're right. You're right. Actually, when I say California HIPAA, I'm being colloquial. California doesn't call itself HIPAA, but its statute is certainly modeled after it. Let's call HIPAA the federal statute. Okay. We can call California something else. So we don't get confused here about what you're talking about. But in any event, okay, the California version of the federal HIPAA. Okay. Maybe HIPAA, maybe. Okay. Both of them apply to any health insurance policy. Okay. Any health insurance policy. So, yes. Let's take the federal HIPAA. Okay. What are you citing for that proposition that it applies to any health insurance policy? It's 30GG-91, small b, subsection one, which I earlier read, but it is that quote. And in the one in this, excuse me, in California. Sir, that was 300GG-91. Was that b? B as in boy one. Okay. That's federal HIPAA, very broad. In state, you have 10273.4 and 10273.6, each of which apply correspondingly to either individual or group health benefit plans. And it says all. Okay. That's the individual or group. That's right. At least on the state basis, we get back to the problem with the blanket again. You say it doesn't apply in federal because there is no distinction in federal.  But under state law, let's just take that for a moment. Under state law, if, arguendo, they sold a blanket policy when they tried to come back in the market, would that not be excluded from the state HIPAA, as you call it? Well, I see what your point is now for state. Good. It's not excluded, though. It's just that state variety of HIPAA applies to individual health benefit in one section and group health benefit in another. Right. And I don't think the insurance company is disputing that. The question is they're arguing that what they sold when they came back into the market was a blanket policy, which under California law appears to be different than a group and an individual policy. Well, in actuality, okay. If it is different, I understand the Court's point. I don't think, though, that they are different for purposes of HIPAA. Okay. That's federal HIPAA now. No, I'm talking about the state version. Because I see that. Okay. Now, why is that not the case? Because in the blanket, and I think I covered that in the briefs, that there are differences in some of the statutes between blanket and group and individual. It seems to be a different variety for some purposes. Can we agree that in perhaps more than any other portion of the law, certainly under state law, that insurance law thrives on definitions? Of course. It lives and dies by definitions, both in policies and in statutes. So how policy is defined is very, very important in terms of whether it's covered. Well, or for whatever purpose. And that's my point, Your Honor. There is no ‑‑ I don't think there's any material distinction between the policies for purposes of HIPAA. They might be for those other statutes in California. The statute that you cited, I guess that was the federal, where under state law, under the state HIPAA, as you call it, where does it say that if they market blanket, group, or individual policies, that they don't qualify here? It doesn't. It doesn't talk specifically about blanket. They just talk about group and individual, right? That's correct. Okay. But my point is, and I made it in the brief, is that I realize there's some statutes for some purposes that make a distinction. But for purposes of this, and I believe other purposes, and I'll have to check on my break, but in other situations, a blanket policy is not a group policy. It is more properly called an individual policy. But here's the ‑‑ Okay. Now, help me again one more time, because this, at least from this judge's perspective, this turns on these words, the meaning of the words in the statute. It's very important. For purposes of the state. Now, tell me, under the California Insurance Code, what the section is that you believe states that a blanket policy as defined in the section I cited a minute ago is covered, if they market that, they still have a problem. What is that quote, please? I don't think there is a statute. Okay. That expressly says what I'm saying. So arguably the insurance company could be right in terms of the construction of what they did if a blanket policy is different than a group or an individual policy. Assuming that's what ‑‑ Under the state statute. Under the state statute. Right. Okay. That's possible. Okay. Now, of course, we were thrown out on every claim, including federal HIPAA, including uniform, I'm sorry, the unfair competition law predicated on that statute as well. So if your honors have a ‑‑ if there is a basis for reversal as to any claim, then it all goes back. And that's what we want. The fact is, in this case, that there are really just two disputes between the parties, one of which is legal, one of which is factual. The legal dispute is very clear. It's a question of whether those statutory provisions are incorporated into the policy as if they were written in there themselves. Let's take that for just a minute. How far does the principle apply? Let me tell you specifically what my problem is. If we had an insurance contract and you said I'm ‑‑ and the insurance company says, I can terminate this policy at will in 30 days, with 30 days' notice, and the statute says no policy shall be terminated except on 90 days, I can understand why we would say, well, the contract must include California law, so we will interpret the contract as if it said 90 days. If it would be less than that, then you would be in breach of the contract. It's less clear to me, and I realize there's some very broad language in those California cases, but it's less clear to me that in an insurance contract that all of a sudden the entire California insurance code gets adopted as though it were part of the policy because there are many provisions in there that seem to be purely regulatory that really don't go to the relationship. And one of those, it seems to me, might be the provision that you're not allowed to come back into the state and write insurance policies for five years once you've withdrawn. That's not the same caliber as saying you get 90 days' notice. Well, actually, I think it is, Your Honor. First of all, let me back up. We're not arguing, nor it's not an issue before this court, that every insurance code provision in existence applies, I mean, is incorporated. The California cases even draw the line at absurd results. We're not going to stretch this doctrine into absurdity. That's the outer limit. I understand your court's, the court's concern, perhaps, you know, where is the outer limit, really, if there's one less than absurdity. And, Your Honors, it's in the California cases itself. If we just follow the California cases, they all involve statutory provisions that deal with the mandatory provision of coverage, and in our case, and in some of those cases, the continuation of coverage at the insurance option. So they're right on point with this case. So to the extent it's mandating coverage or continuing coverage, those provisions definitely apply. Those definitely fall within the doctrine that the California cases talk about. That's all we need to do in this appeal, and that's, in fact, all that we're asking for in the case. We realize that if they complied with the conditions, then, of course, there's no breach of contract. But even if you assume, and I actually had litigated a case once dealing with this issue, not with insurance, but in incorporation of statutes, and I probably agree with that, but let's assume for a moment that that is a true principle, that the relevant statute about ability to terminate was incorporated by reference into the statute. You still get back to the problem of whether they came back in with a policy that is prohibited. Isn't that correct? Of course. I just said that's the issue of whether they complied. Yes. If that's correct. Yes. And if they didn't violate that, then you're still out, right? Of course. But that's a factual dispute that can't be resolved by summary judgment, whether it's disputed evidence. Is it a factual dispute or is it a pure legal dispute as far as the nature of the policy? Because that was introduced in evidence. The policy was introduced into evidence. And either it is or it isn't, it's a legal point, isn't it? No. I still think it's a factual dispute, although I must say that I do think, and that's one reason we move for summary judgment, I believe, ourselves, is because we believe the evidence is undisputed on our side that this qualifies under the broad HIPAA definition, federal, of any health insurance policy, which this clearly is. Yes. I'm reading, I think, from the federal statute where it says, you know, The issuer elects to discontinue offering all health insurance in the individual market in a state. And then it must cease all health insurance issued or delivered in such market. So we're talking about what is the individual market. And then it seems to me you look at the blanket policy and you say, is that policy offering insurance in the individual market? Okay. That's correct, Your Honor. And remember there's the corresponding HIPAA provision on group policies as well. And so, and remember also, secondly, and this is the most critical point. It doesn't say an insurer doesn't have to abandon all insurance in the state to qualify. It just, it can withdraw from coverage in the individual market. And the group market, the other section. Well. It's both markets. No, there are two identically. But can't they just say, look, we're no longer offering insurance in the individual market, so we're terminating our individual policies under whatever notice, 180 days or something. And we're not going to be in the individual market anymore, even though we're still in the group market. Can't they do that? Certainly they can. Yeah. Yes. Okay. So assuming then, I see what you're saying. I think that I heard them say, well, ask them when they get up. But I think they're withdrawing from the individual market. Well, that's correct. And I think that's clear that we are now talking about the individual market only, because this is not a group policy under HIPAA. So we're in agreement on that. The disagreement, and it's a big one, is whether the introduction of this other policy afterwards, four months after, comes under HIPAA as any health insurance policy. Well, I think the question might be whether it is a sale in the individual market from which they said they withdrew. But that would cover all health insurance policies. That's what I'm – I think maybe we're agreeing, or maybe we're not, but if you construe the provisions together, where HIPAA is so broad, talking about any health insurance benefit, then it seems to me that would be – Well, it isn't necessarily that broad. That's what I'm saying. Apparently, I think, and we can pursue it with your opponent, but it looks to me like you can elect to get out of a market. And one of the ones you can elect to get out of is the individual market in the state. That's correct. And then the question would just be, is the offering of blanket insurance an offering in the individual market? But, Your Honor, I have cited in the brief, and if the Honor gives me a minute or two at the end, I will direct the Court to where we are relying on the fact that a blanket policy, whether you call it blanket or non-blanket, it does constitute either an individual or a group policy which comes under HIPAA. Now, we believe it's properly identified as an individual policy for the reasons I stated before, because of this. Let me have a minute on this. Group policies are defined very narrowly as employee groups. Everything else is an individual policy because it's either group or individual. So this is issued to an association, not an employer group. Therefore, it's individual. That blanket policy is not issued to an employer. It's issued to an association just like the associations that plaintiffs were a part of when they got their policy. All these distinctions that they're bringing up, they're just without significance. Okay. I think I understand your position. Thank you, Counsel. Good morning, Your Honors. May it please the Court, I am James Moke, representing Mutual of Omaha. What market or markets did Mutual withdraw from? They withdrew from the major medical insurance market on the individual level. It's confusing a little bit because it's individual in terms of how the federal HIPAA defines individual, because they carve out association and make that individual. It's group under California law because it was issued to an association. What HIPAA actually says, and this is what the Court was referring to, I think, a moment ago, is that 42 U.S.C. 300GG42C2 says that if an insurer decides to discontinue offering all health insurance in the individual market in the state, the insurer may not provide for the issuance of any health insurance in the market and the state. Now, the policy that's issued here is the NASCC policy. It was issued by Mutual of Omaha in Washington, D.C. It was not issued in California, so it was not issued in this state. It is a policy. Counsel just said that it was an association policy just like the other association policies that we were talking about. It was not. low-income areas. And the third point that I think gets skipped over here is that the assumption is that the NASCC policy insured people in the state of California. And I'm not sure that there's any evidence before this Court that says that. There is one bill that shows up in the record that indicates that it was sent to an entity in Los Angeles. It doesn't indicate there's no evidence that it was paid. There's no evidence that the employees or the members there were ever insured in the state of California. So even if you assume everything else that counsel is saying, there's no evidentiary support for, yes, blanket insurance is the same, and by the way, you covered people in California. That just didn't happen. At least there's no evidence in the record. Counsel says, and a number of things that he said were undisputed are, in fact, disputed. He starts with the premise that HIPAA says that insurance is guaranteed renewable. HIPAA nowhere says that. HIPAA says an insurance company shall not do this unless. It never uses the words guaranteed renewable. Counsel makes the assumption that if an insurance company violates that statute or the California parallel statute, and I don't like California HIPAA either, I don't think it's a HIPAA statute, that somehow that gives them a private right of action for damages. That's not true. None of the statutes say, by the way, if you don't comply with the statute, the policy shall continue in force forever and ever after this. They say you shall do this and leave it to the administrative remedies and the Department of Insurance or the Department of Health and Human Services. Has the California Department of Insurance raised any objections to the blanket policy that Mitch Obama has issued in the District of Columbia? No. Has a complaint been raised to them about this practice and whether Mutual has entered back into the market? Not to my knowledge, Your Honor. If you go back and look at the letter that Mutual of Omaha, when it was trying to be a nice insurance company, and wrote to the California Department of Insurance and said, here's what we're doing, we're non-renewing major medical insurance in California, but by the way, and this is at SCR 72, we're going to leave in force, they don't use the word blanket policy, but they use limited policies and a variety of other kinds of policies, Medicare supplement, critical illness, long-term care, supplemental health products, and limited coverage. Now, they're telling the Department of Insurance, this is what we're doing, and they sat down with the Department of Insurance, they sent an executive vice president out to sit down with them and tell them what we're doing, and then they went through the process with them, and the California Department of Insurance did not object to any of that. If we accept counsel's definition of health insurance as any insurance that covers any or issues any health benefit, then any of those other types of policies have some sort of health benefit as well. But the California Department of Insurance had no objection to this. Mr. Monca, for a moment, let's assume that HIPAA leaves a term undefined. Let's take blanket insurance. But state law, in this case California state law, defines it. Are there any regulations or cases that you're aware of that indicate that where a term is undefined in a particular insurance market by federal law, but state law defines it, that the federal law follows the state law on that, or is it just a vacuum? I don't know that there's any case law that addresses that specific question. I'm sure there's ample case law for the proposition that if the legislature talks about group insurance here and individual insurance here, and right in the middle they talk about blanket insurance, the legislature is presumed to know that there are at least three different kinds of insurance that they're dealing with. And that's what happened here. All these statutes are in exactly the same chapter. So we assume that that's what the legislature was doing. It's dangerous to assume. Well, it is dangerous to assume, Your Honor, but we don't really have much option. That's sort of what we're left with. Counsel said that their claim under federal HIPAA was thrown out in the district court. That's not exactly accurate. If you go back and look at the complaint, they never pled a claim under HIPAA. They never pled an unfair competition claim based on HIPAA. HIPAA was something that came up in our moving papers, not in their moving papers. So their claim under HIPAA was not thrown out. It never existed. I'd like to go back and address the question. They may get there by the breach of contract claim. Well, I was just going to go there. If you look at the cases that they cite for the proposition that a breach or a portion of the insurance statute is read into the contract, first of all, I have issue, as the Court itself addressed a moment ago, with the concept that every insurance code section is read into every insurance contract, and any breach of any insurance code section can be a breach of the contract and, therefore, a breach of the implied covenant of good faith and fair dealing and, therefore, lead to punitive damages. The cases don't say that. That very argument was made to this Court in the credit manager's Kenesaw case in 1986, and this Court said, no, that's not what we do. What we do here is look for legislative intent that there be some sort of private right of action arising from the statute. In the particular case before the Court then, the Court decided that there wasn't a private right of action arising from the breach of the statute. Is that Webb you're talking about? No, it's credit life versus Kenesaw or credit managers versus Kenesaw life. Okay. Counsel in the reply brief says, well, the statute there was permissive. It wasn't mandatory, and these are mandatory statutes. That's not true. The statute involved there, insurance code section 803, said the insurance company shall, much like they do it here. The cases that plaintiff cites for the proposition from California with the loose language that you read them into the statute, or read the statute into the contract, first of all, don't go so far as to say, and by the way, that leads you to a breach of contract action. But there are all cases that say the contract shall include the following language. Most of them are automobile insurance cases, and the reason the courts get to that result is because insurance code section 11580.1B says that every policy of auto insurance issued or delivered in this State shall contain the following provisions. So it's a little easier to determine that there's a legislative intent to have those provisions read into the contract when you have that kind of language. The TAB case that they're so fond of citing here for the proposition that statutes are read into contracts involved the PUC requiring not only that a contract contain particular terms, but that an endorsement setting forth those terms be physically attached to the contract. That's not the situation we have here. What we have here is statutes, and the question is whether or not the legislature intended for there to be a private right of action. The legislature certainly didn't, there's no evidence of that, and there is ample authority for the proposition that that doesn't happen in every instance. As a matter of fact, well, let's just, if you, on our web versus smart document solutions case or Farmers Insurance Exchange versus Superior Court in the State of California, if we assume that there is no private right of action under Federal HIPAA and the State, you know, similar law, does that vitiate their claim under any breach of contract, assuming that everything else is there for them to make a claim? Well, they don't point to any provision of the contract that was breached. I think we are actually in agreement that we complied with the terms of the contract in withdrawing from the State of California. So, yes, I think unless there's a private right of action arising under one of these statutes, then they've lost the breach of contract claim. HIPAA, as I started to say a minute ago and went off track a little bit, provides for administrative remedy. It's at 300GG-22. So if the insurance company fails to comply with one of those shall statutes that you mentioned, then the insurance commissioner can discharge his responsibilities on that or someone can file a claim with the insurance commissioner to require them to do that. Is that what you're saying? Yes. Actually, what the statute requires is first that the insurance commissioner deal with it. And if the insurance commissioner doesn't, then the statute says the Secretary of Health and Human Services shall deal with it. So when you read the cases about private right of action, one of the things you look at is whether or not there's been an administrative remedy provided for the wrong. And there's an administrative remedy provided for the wrong. Well, that's what that Farmer's Insurance Exchange case dealt with, right? Yes. There's a one of the cases that we didn't cite in the brief is Maradi Shalal v. Fireman's Fund Insurance Companies, 46 Calif. 287, which was that very issue. It was a hot and heavy dispute for a long time in the State of California, whether insurance code section 790.03 was read into the contract for purposes of breach of contract or bad faith. And that was the California Supreme Court saying, no, there's no legislative intent. And, oh, by the way, there's an administrative remedy here. So you've got your administrative remedies. Don't bother us with that. How could let's assume arguendo that there were there was a cause of action. Since the insurance company worked with the insurance commissioner in leaving the individual medical insurance coverage market, could there be clear and convincing evidence that would sustain punitive damages in a situation like that? I don't know how you do that. I mean, I don't know what a company can do differently. You know, they had no obligation to do this. We argue back and forth about whether there was approval of what they did. And the reason you don't see a stamp of approval is because this isn't in the course and scope of ordinary dealings between insurance companies and insurance commissioners. There's no process for this. The insurance company went out of its way to go to the insurance commissioner and say, here's what we're doing. Tell us if we're violating anything. Tell us if you need us to do anything else. I don't know how that's malice. I don't know how you clear convincing evidence of malice or otherwise. And as far as the unfair competition statute is concerned, the predicate of that in their case is the breach of contract action. Isn't that correct? It's yes. It's predicated on the breach of contract, which in turn is predicated not on the contract, but on statutes that they would like to have the court read into the contract. So if the court were to find that there was no breach and that you're coming back into the market was with a different kind of policy than argued by definition, the unfair competition claim would go away. Yes, Your Honor, that's correct. I understand your point that you doubt that the blanket policy has been issued, that there are any beneficiaries of it in California, but let's assume that there are. What is it that excuses the blanket policy? What is it that makes that not an individual policy? Well, it's issued, well, first of all, it's not an individual policy within the meaning of the federal HIPAA, because it wasn't issued in this market or state, even if we assume what you're assuming, that there are individual insureds in this state. It was issued to an association in Washington, D.C. It was approved by the insurance commissioner in Washington, D.C., as a blanket insurance policy issued there. So that deals with the federal HIPAA. It's dealt with in the California statutes, because the California statutes clearly make a distinction between group, individual, and blanket insurance. Can you help me understand what the difference is between those? I'm looking at the California statute that defines blanket insurance. The examples all seem to be organizations, largely charitable, except maybe for the newspapers, of some kind. We have camping, I assume that covers the Boy Scouts, the volunteer fire company. We have colleges and schools, religious and charitable, recreational, educational, athletic or civic organizations. And do I understand that this blanket policy, for example, under the camping organization, it covers you while you're camping, so that if somebody gets injured at a Boy Scout camp and the Boy Scouts have a blanket policy, then somebody's covered without the Boy Scouts having to go to the insurance company and say, here's the list of all of our campers, we want all these people covered under the policy. What it really is, yes, but it's issued to an association or group, in this case a group, I think. And the evidence that is in the record on this is the NASCC was a charitable organization. I can draw from personal experience. My daughter was in the ACE program out of Notre Dame, where she went out and taught in inner cities for a couple years, and she had the same kind of insurance, where she got paid a minimal amount, and then they had this insurance that fit on top of my insurance. So what it is, is everybody in the group, back to the record, everybody in the group is covered under it, automatically mandated, unless they wave their way out of it, no issues about age or health or experience. And individuals are not making any premium payments, so nothing's being deducted from their checks. Individuals are not making premium payments. The premium payments are being made by the NASCC individual entities. So we have the policy written in Washington, D.C., for the Conservation Corps, and it simply covers Conservation Corps participants wherever they are in the United States. The individual chapters sign up and sign up their members, but yes, wherever they are in the United States. It may be in California. It may not be in California. There's no evidence that they were in California, but, yeah, it may be in California. It may not be in California. Most of them clearly weren't. Blanket insurance, in case it's not clear, is something that fits on top of somebody else, you know, like a blanket, fits on top of somebody else's health insurance coverage as access coverage. It gets what the lower policy doesn't get. It's interesting, too, that one of the things that was mentioned in the letter that the Department of Insurance approved was Mutual of Omaha's offer to continue to insure Medicare-eligible people under a Medicare supplement policy if they were entitled and interested. It's the same concept. Medicare supplement insurance coverage is a blanket policy, too. It fits on top of the Medicare policy and gets whatever Medicare doesn't get. So it was covered and approved by the Department of Insurance as well. Your opposing counsel suggests that this was inappropriately disposed of at the summary judgment level because there were material issues of fact that are essential to disposing or dealing with this case. What's your response to that? I don't know what individual facts there are, and counsel hasn't said. I would point out that they made a motion to compel additional discovery with regard to this that was heard before the magistrate judge, and the magistrate judge found that they were not entitled to further discovery because, quote, plaintiffs have the materials they need to argue that defendants issued a health insurance policy after January 2003, close quote. That's at SCR 266. They did not appeal that ruling to the district court, and I think they waived that argument. Unless the court has anything further, I thank you for your time. Thank you, counsel. Mr. Chang? I believe you had some time remaining. He doesn't, actually. Oh, you don't. All right. But I will allow you one minute for anything that we absolutely have to hear. Okay. Thank you, Your Honor. First, there is evidence in the record, and please look at ER 115 to 118, which shows some of the California participants, association participants in that policy. So, and right there, there's a factual dispute as to whether things were sold to California residents. Who cares where it was issued? Policies are always issued somewhere else. It's a question for HIPAA, where was it sold? And that's right in HIPAA. And then let's also go back to HIPAA again to get rid of this distinction between blanket, individual, and group. For HIPAA purposes, and I can't overemphasize this, it's either group or individual. It's group if it's employer. It's individual if it's not. That's just as simple as it gets. It's in the statute. So I'll just talk about blanket. You know, the blanket policy is issued to associations just like the ones plaintiffs were involved in. They're not groups. They're not employer groups. They're loose associations that allow people to get, you know, insurance that they otherwise couldn't get, hopefully at a better rate. Counsel, did you file a complaint with the California Commissioner of Insurance? I don't think the Department of Insurance has any idea, no, what has happened. But you did complain to them that Mutual of Omaha had snuck back in. I don't. Oh, that they have, I don't know. That there was a violation of the regulation. I don't know. That's not on the record. Okay. I can't answer that accurately. You haven't sought any. Personally, I have not. Okay. No.  Okay. Yes. Thank you, Counsel. Thank you. Now, Richter is submitted, and we will proceed to the next case, which is NRDC v. Winter.
judges: Bybee, Smith, Canby